UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:_____

FEDERAL DEPOSIT INSURANCE
CORPORATION AS RECEIVER FOR AMTRUST
BANK,

            Plaintiff,

v.

FOUNDATION MORTGAGE CORPORATION,
a Florida corporation,

            Defendant.

_____/

## COMPLAINT

Plaintiff the Federal Deposit Insurance Corporation as Receiver for AmTrust Bank ("FDIC-R") sues Defendant Foundation Mortgage Corporation ("Foundation" or "Defendant"), and alleges as follows:

## INTRODUCTION

1. This action is brought against Foundation for its breach of the July 14, 2004 Master Correspondent Loan Purchase Agreement, as amended from time to time, pursuant to which Foundation sold or transferred mortgage loans to AmTrust Bank, formerly known as Ohio Savings Bank ("AmTrust").

2. Foundation breached its representations and warranties in the Master Correspondent Loan Purchase Agreement by providing AmTrust incomplete, inaccurate, false or misleading information regarding six mortgage loans sold or transferred to AmTrust.  The FDIC-R files this action to recover the losses caused by Foundation's breaches.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 12 U.S.C. § 1819(b)(2)(A) because suits brought by the FDIC-R are deemed to arise under the laws of the United States.

1

4.     Venue exists in the Southern District of Florida under 28 U.S.C. § 1391. Defendant resides in this district and is a resident of the state of Florida. In addition, a substantial part of the events or omissions giving rise to the claim occurred in this district because the mortgage loans that are the subject of this action were funded to borrowers in this district. Moreover, the properties that are the subject of this action are situated in this district.

## THE PARTIES

5.     The Federal Deposit Insurance Corporation ("FDIC") is a corporation and instrumentality of the United States of America, established under the Federal Deposit Insurance Act, 12 U.S.C. §§ 1811-1835(a), and is authorized to be appointed as receiver for insured depository institutions that have failed. AmTrust was a federally chartered savings bank with its principal place of business in Cleveland, Ohio. AmTrust was in the business of, among other things, buying and/or funding mortgage loans. On December 4, 2009, the Office of Thrift Supervision closed AmTrust and appointed the FDIC as Receiver pursuant to 12 U.S.C. §§ 1464(d)(2)(A) and 1821(c)(5). The FDIC as Receiver is empowered to sue and complain in any court of law pursuant to 12 U.S.C. § 1819, and pursuant to 12 U.S.C. § 1821(d)(2)(A)(i), the FDIC-R, by operation of law, succeeded to all of AmTrust's claims. In this action, the FDIC-R seeks to recover damages resulting from the conduct of the Defendant. The FDIC-R owns the subject claims and has standing to prosecute this action as AmTrust's receiver.

6.     Defendant Foundation is a Florida corporation with its principal place of business in Miami Beach, Florida. Foundation is engaged in the business of, among other things, processing, packaging, submitting for funding, selling and/or transferring loans secured by real property, and is doing business in this district.

## **THE AGREEMENT**

7. In 2004, AmTrust and Foundation entered into a written contract entitled Master Correspondent Loan Purchase Agreement (hereinafter, "Agreement"). The Agreement sets forth terms and conditions pursuant to which Foundation would sell and/or submit and AmTrust would purchase and/or fund mortgage loans.

8. Foundation made the following representations and warranties to AmTrust with respect to each loan submitted under the Agreement:

VI.   **REPRESENTATIONS AND WARRANTIES**

6.1 **Representations and Warranties; Mortgage loan**. [Foundation] represents and warrants to [AmTrust], as to each Mortgage Loan to be purchased by [AmTrust] pursuant hereto (as of the Closing Date and the Purchase Date thereof unless otherwise stated), as follows:

(a) The information contained in the Underwriting Package is complete, true and correct.[1]

…

(h) The Mortgage Loan and The Mortgage Loan Documents comply with all FNMA and FHLMC underwriting standards and documentation requirements, except as otherwise expressly provided by Purchaser's specific Loan Programs.

…

(p) [Foundation] has no knowledge of any circumstance or condition with respect to the Mortgage, the Mortgaged Property, the Mortgagor or the Mortgagor's credit standing that might be reasonably expected to cause FNMA, FHLMC or other institutional mortgage loan purchasers to regard the Mortgage Loan as an unacceptable investment, cause the Mortgage Loan to become delinquent or adversely affect the value or marketability of the Mortgage Loan or the Mortgaged Property.

---

[1] The Agreement provides the following definition of "Underwriting Package": "'Underwriting Package' shall mean, with respect to a Mortgage Loan to be purchased under a particular Mortgage Loan Program, the items specified therefore in [AmTrust]'s underwriting standards for such Mortgage Loan Program, including without limitation, fully completed and signed loan applications, credit reports, deposit and employment verifications, evidence of income, appraisal, location survey, Federal Truth-in-Lending Act ("TIL") and Real Estate Settlement Procedures Act ("RESPA") disclosure documents (acknowledged by Mortgagor), [Foundation]'s approval sheet, and all Loan Documents then available, if any."

      9.     Regarding Foundation's repurchase and indemnification obligations, the Agreement provides:

> **7.1    Repurchase.**
>
> (a)    Upon (i) failure by a Mortgagor to pay the full amount of any payment due pursuant to any Mortgage Loan within 30 days after the date when such payment was due two or more times within six (6) months after the first date after [AmTrust's] purchase thereof on which a regular monthly payment of principal and interest is due pursuant to such Mortgage Loan, [or] (ii) discovery by [AmTrust] of a breach of any of the representations and warranties contained in Article VI . . . [Foundation] shall repurchase said Mortgage Loan at a price equal to the higher of the purchase price or 100% of par, with adjustments for accrued interest, prepayment and any comparable items at the time of repurchase, plus attorney's fees, legal expenses, court costs or other expenses that may have been incurred by [AmTrust] in connection with the Mortgage Loan.
> . . .
>
> **8.6** [Foundation] **shall indemnify and hold harmless** [AmTrust], its shareholders, Directors, officers, agents, attorneys and employees, from and against any and all losses, damages, penalties, fines, forfeitures, legal fees and related costs, judgments and other costs and expenses resulting from any claim, demand, defense or assertion based on or grounded upon, or resulting from,
>
>> (a) a breach of any representation or warranty of [Foundation] contained in this Agreement;
>>
>> (b) any act or omission of [Foundation] or any of its partners, directors, members, shareholders, officers, agents or employees in originating or servicing any Mortgage Loan, including, without limitation, incomplete or erroneous loan documentation, fraud by [Foundation] in the origination of the Mortgage Loan, improper escrow disbursements or misapplied payments or claims not covered by insurance, or violation of applicable law or regulation, … [emphasis added]

      10.    A February 13, 2005 Addendum to the Agreement confirms the cumulative and discretionary nature of the repurchase and indemnification remedies available to AmTrust.

> In the event of a Material Error with respect to a Mortgage Loan, [Foundation] shall, at [AmTrust's] sole and absolute discretion, (i) repurchase such Mortgage Loan and (ii) fully indemnify and hold [AmTrust] harmless from and against any and all liability, loss, cost or damage arising out of or relating to the Material Error.

      11.    Pursuant to the provisions contained in the Agreement and its addendum, Foundation sold, submitted and/or submitted for funding the loans that are the subject of this action to AmTrust.

4

12. The Agreement was further amended from time to time; however, the substantive requirements regarding Foundation's representations and warranties, as well as Foundation's repurchase and indemnity obligations, remained consistent.

## COUNT I
## BREACH OF CONTRACT
## (ELLIOTT LOAN)

13. Plaintiff realleges paragraphs 1 through 12, as if fully set forth herein.

14. Pursuant to the Agreement, in or about December 2006, AmTrust purchased and/or funded a $218,941 loan to borrower Dezman Elliott, secured by property located in Riviera Beach, Florida (the "Elliott Loan").

15. AmTrust purchased and/or funded the Elliott Loan, pursuant to the terms of the Agreement, for valuable consideration and in reliance upon the representations and warranties made by Foundation in the Agreement.

16. In breach of the representations and warranties that Foundation made to AmTrust in the Agreement, the information contained in the Elliott Loan Underwriting Package was incomplete, untrue, and incorrect, by, among other things: misrepresenting the borrower's debt obligations and misrepresenting the borrower's occupancy of the property as a primary residence.

17. The Elliott Loan defaulted.

18. Starting on or about October 29, 2015, Plaintiff demanded that Foundation perform its obligations under the Agreement with regard to the Elliott Loan, including but not limited to its indemnification obligation. Foundation failed and refused to indemnify Plaintiff for losses relating to the Elliott Loan or otherwise perform under the Agreement.

19. Foundation failed to perform its obligations under the Agreement with respect to the Elliott Loan.

20. AmTrust and the FDIC-R performed all of their obligations to Foundation under the Agreement with respect to the Elliott Loan, except any obligations AmTrust and the FDIC-R have been prevented or excused from performing by the acts and breaches of Foundation.

21. As a result of Foundation's breach of the Agreement, including, but not limited to, its failure to perform its obligations under the Agreement, damages were suffered in an amount to

be proven at trial. Thus, the FDIC-R is entitled to damages, plus interest, and attorneys' fees and costs under the Agreement.

## COUNT II
## BREACH OF CONTRACT
## (MERA LOANS)

22. Plaintiff realleges paragraphs 1 through 12, as if fully set forth herein.

23. Pursuant to the Agreement, in or about December 2005, AmTrust purchased and/or funded a first loan of $219,200 and a second loan of $54,800 to borrower Carlos Mera, secured by property located in Miami Beach, Florida (the "Mera Loans").

24. AmTrust purchased and/or funded the Mera Loans, pursuant to the terms of the Agreement, for valuable consideration and in reliance upon the representations and warranties made by Foundation in the Agreement.

25. In breach of the representations and warranties that Foundation made to AmTrust in the Agreement, the information contained in the Mera Loans Underwriting Package was incomplete, untrue, and incorrect, by, among other things: misrepresenting the borrower's income and debt obligations, and misrepresenting the borrower's occupancy of the property as a primary residence.

26. The Mera Loans defaulted.

27. Starting on or about July 30, 2013, Plaintiff demanded that Foundation perform its obligations under the Agreement with regard to the Mera Loans, including but not limited to its indemnification obligation. Foundation failed and refused to indemnify Plaintiff for losses relating to the Mera Loans or otherwise perform under the Agreement.

28. Foundation failed to perform its obligations under the Agreement with respect to the Mera Loans.

29. AmTrust and the FDIC-R performed all of their obligations to Foundation under the Agreement with respect to the Mera Loans, except any obligations AmTrust and the FDIC-R have been prevented or excused from performing by the acts and breaches of Foundation.

30. As a result of Foundation's breach of the Agreement, including, but not limited to, Foundation's failure to perform its obligations under the Agreement, damages were suffered in an

6

amount to be proven at trial. Thus, the FDIC-R is entitled to damages, plus interest, and attorneys' fees and costs under the Agreement.

## COUNT III
## BREACH OF CONTRACT
## (DELAMADRIZ LOANS)

31. Plaintiff realleges paragraphs 1 through 12, as if fully set forth herein.

32. Pursuant to the Agreement, in or about March 2006, AmTrust purchased and/or funded a first loan of $154,000 and a second loan of $55,000 to borrower Juan-Andres Delamadriz, secured by property located in Coral Gables, Florida (the "Delamadriz Loans").

33. AmTrust purchased and/or funded the Delamadriz Loans, pursuant to the terms of the Agreement, for valuable consideration and in reliance upon the representations and warranties made by Foundation in the Agreement.

34. In breach of the representations and warranties Foundation made to AmTrust in the Agreement, the information contained in the Delamadriz Loan Underwriting Package was incomplete, untrue, and incorrect, by, among other things: (1) misrepresenting the borrower's assets; (2) misrepresenting the borrower's employment; (3) misrepresenting the nature of the transaction as a refinance disguised as a purchase because the borrower had a pre-existing ownership interest in the collateral property ; and (4) omitting the fact that this was not an arm's-length transaction because the purported property seller was actually Delamadriz's business partner and co-owned the subject property with Delamadriz until just before the Delamadriz Loans funded.

35. The Delamadriz Loans defaulted. Only one payment was made on the Delamadriz Loans before they went into default; therefore, Foundation was additionally required to repurchase the Delamadriz Loans from AmTrust and is liable for any losses relating to the Delamadriz Loans as detailed in paragraph 9, above.

36. Starting on or about May 13, 2015 and November 19, 2015, Plaintiff demanded that Foundation perform its obligations under the Agreement with regard to the Delamadriz Loans, including but not limited to its indemnification obligation. Foundation failed and refused to

indemnify Plaintiff for losses relating to the Delamadriz Loans or otherwise perform under the Agreement.

37. Foundation failed to perform its obligations under the Agreement with respect to the Delamadriz Loans.

38. AmTrust and the FDIC-R performed all of their obligations to Foundation under the Agreement with respect to the Delamadriz Loans, except any obligations AmTrust and the FDIC-R have been prevented or excused from performing by the acts and breaches of Foundation.

39. As a result of Foundation's breach of the Agreement, including, but not limited to, Foundation's failure to perform its obligations under the Agreement, damages were suffered in an amount to be proven at trial. Thus, the FDIC-R is entitled to damages, plus interest, and attorneys' fees and costs under the Agreement.

## COUNT IV
## BREACH OF CONTRACT
## (WICKWIRE LOAN)

40. Plaintiff realleges paragraphs 1 through 12, as if fully set forth herein.

41. Pursuant to the Agreement, in or about August 2006, AmTrust purchased and/or funded a $118,400 first lien loan to borrower Paul Wickwire, secured by property located in Homestead, Florida (the "Wickwire Loan").

42. AmTrust purchased and/or funded the Wickwire Loan, pursuant to the terms of the Agreement, for valuable consideration and in reliance upon the representations and warranties made by Foundation in the Agreement.

43. In breach of the representations and warranties Foundation made to AmTrust in the Agreement, the information contained in the Wickwire Loan Underwriting Package was incomplete, untrue, and incorrect, by, among other things: (1) misrepresenting the borrower's income; (2) misrepresenting the borrower's assets; and (3) misrepresenting the borrower's history of rental payments.

44. The Wickwire Loan defaulted.

45. Starting on or about September 1, 2015, Plaintiff demanded that Foundation perform its obligations under the Agreement with regard to the Wickwire Loan, including but not limited to its indemnification obligation. Foundation failed and refused to indemnify Plaintiff for losses relating to the Wickwire Loan or otherwise perform under the Agreement.

46. Foundation failed to perform its obligations under the Agreement with respect to the Wickwire Loan.

47. AmTrust and the FDIC-R performed all of their obligations to Foundation under the Agreement with respect to the Wickwire Loan, except any obligations AmTrust and the FDIC-R have been prevented or excused from performing by the acts and breaches of Foundation.

48. As a result of Foundation's breach of the Agreement, including, but not limited to, Foundation's failure to perform its obligations under the Agreement, damages were suffered in an amount to be proven at trial. Thus, the FDIC-R is entitled to damages, plus interest, and attorneys' fees and costs under the Agreement.

WHEREFORE, Plaintiff FDIC-R respectfully requests that:

A. The Court find Defendant Foundation Mortgage Corporation liable for its breaches of contract, and enter judgment for any and all remedies available under the contract or by operation of law including without limitation: damages, attorney's fees, costs, expenses, interest, and other such relief the Court may deem appropriate under the circumstances;

B. The Court issue an order of specific performance, requiring Defendant Foundation Mortgage Corporation to perform its repurchase and indemnity obligations under the Agreement;

C. The Court award costs and disbursements and order such other and further relief, including equitable relief, that is just and proper.

Dated: December 2, 2015

Respectfully submitted,

By: __/s/ *Josh A. Migdal*_____
Josh A. Migdal, Esq. (Fl. Bar No. 19136)
jmigdal@sgfcounsel.com
George T. Breur, Esq. (Fl. Bar No. 33283)
gbreur@sgfcounsel.com
Stolzenberg, Gelles, Flynn & Arango LLP

9

       1401 Brickell Ave., Suite 825
Miami, FL  33131
Telephone: (305) 961-1450
Fax: (305) 423-3979
*Counsel for Plaintiff Federal Deposit Insurance Corporation as Receiver for AmTrust Bank*